Cyrus M. Sanai, SB#150387
SANAIS
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California, 90210
Telephone: (310) 717-9840
cyrus@sanaislaw.com

Attorney for PEYMAN ROSHAN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PEYMAN ROSHAN,

            Plaintiff,

    vs.

DOUGLAS R. MCCAULEY, in his
personal capacity and official capacity;
and DOES 1-10, individuals whose
capacity is unknown.

            Defendants.

Case No. _____

**COMPLAINT**

JURY DEMAND

Plaintiff PEYMAN ROSHAN hereby alleges as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 USC §§ 1331, 1343(3), 1343(4), 1367, 2201, 2202, and 42 USC § 1983; and supplemental jurisdiction under state statutory and constitutional laws. Venue is proper in this district and Division because events that gave rise to the claim occurred in Oakland, CA, within the Northern District of California, and the Defendants have offices in Sacramento.

## THE PARTIES

2. Plaintiff, PEYMAN ROSHAN ("ROSHAN") has obtained a license from the California Department of Real Estate ("DRE") and is an attorney admitted to practice in California, who resides in the County of Sonoma, State of California.

3. Defendant, DOUGLAS R. MCCAULEY ("MCCAULEY"), is the DRE Commissioner. "There is in the Business, Consumer Services, and Housing Agency a Department of Real Estate, the chief officer of which department is named the Real Estate Commissioner." Cal. Bus. & Prof. Code § 10050(a)(1). The California Business, Consumer Services, and Housing Agency is a cabinet-level agency of the executive branch of the government of the State of California. "It shall be the principal responsibility of the commissioner to enforce all laws in this part and Chapter 1 (commencing with Section 11000) of Part 2 in a manner that achieves the maximum protection for the buyers of real property and those persons dealing with real estate licensees." *Id.* at § 10050(b). "Protection of the public shall be the highest priority for the Department of Real Estate in exercising its licensing, regulatory, and disciplinary functions." *Id.* at § 10050.1. Under such statutory authority, the DRE commenced an action against ROSHAN to be heard before the DRE, and, pursuant to statutory requirement, to be presided over by an administrative law judge. Cal. Gov. Code § 11512. The DRE action before the DRE is not a proceeding before a court vested with judicial power as "[t]he

judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." Cal. Const. art. VI § 1.

4.      Defendants, DOES 1-10, are individuals whose capacities and role in violating the rights of Plaintiff are unknown at this time.

## THE INADEQUACIES OF THE CALIFORNIA SUPREME COURT ORDER TO SATISFY STATUTORY REQUIREMENTS FOR RECIPROCAL DISCIPLINE IN DRE PROCEEDINGS

5.      Bus. & Prof. Code § 10177 provides:

> "The commissioner may suspend or revoke the license of a real estate licensee, delay the renewal of a license of a real estate licensee, or deny the issuance of a license to an applicant, who has done any of the following, or may suspend or revoke the license of a corporation, delay the renewal of a license of a corporation, or deny the issuance of a license to a corporation, if an officer, director, or person owning or controlling 10 percent or more of the corporation's stock has done any of the following:
>
> …
>
> (f) Acted or conducted themselves in a manner that would have warranted the denial of their application for a real estate license, either had a license denied or had a license issued by another agency of this state, another state, or the federal government revoked, surrendered, or suspended, or received an order of debarment, for acts that, if done by a real estate licensee, would be grounds for the suspension or revocation of a California real estate license, if the action of denial, revocation, surrender, suspension, or debarment by the other agency or entity was taken only after giving the licensee or applicant fair notice of the charges, an opportunity for a hearing, and other due process protections comparable to the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340), Chapter 4 (commencing with Section 11370), and Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code), and only upon an express finding of a violation of law by the agency or entity." Bus. & Prof. Code § 10177.

6.      On December 20, 2022, before the DRE, the DRE filed an Accusation in *In the Matter of the Accusation of Peyman Beykpour*, Case No. H 12623 SF (ROSHAN is erroneously named by his former surname "Beykpour").

7.      In Paragraph 2, the Accusation alleges:

> "On or about February 17, 2021, following a hearing before the State Bar Court of California, Hearing Department, No. 11–O–05799, and an appeal to the State Bar Court of California, Review Department, Case No. 11–O–1202, the Supreme Court of the State of California, in Case No. S265119, ordered Respondent be suspended from the practice of law for three (3) years, stayed, with two (2) year, actual suspension, and placed on probation for three (3) years. The order from the Supreme Court of the state of California was based upon a finding that respondent violated:
>
> (a) 2 counts of Rules of Professional Conduct, Former Rule 3-300;
> (b) 1 count of Rules of Professional Conduct, Former Rule 3-400;
> (c) 1 count of Business and Professions Code section 6068(a);
> (d) 1 count of Rules of Professional Conduct, Former Rule 2-100(A);
> (e) 1 count of Rules of Professional Conduct, Former Rule 3-700(D)(1); and
> (f) 1 count of Business and Professions Code section 6106,
> the commission of acts, which, if done by a real estate licensee, would be grounds for the suspension or revocation of a California real estate license pursuant to the provisions of Sections 10176(a) (Substantial Misrepresentation), 10176(i) (Fraud or Dishonest Dealing), and 10177(j) (Fraud or Dishonest Dealing) of the code."

8.      In Paragraph 3, the Accusation further alleges:

> "The facts alleged…in Paragraph 2 constitute grounds under Section 10177(f) (Other License Discipline) of the Code for suspension or revocation of all licenses and license rights of Respondent under Real Estate Law."

9.      Regarding State Bar Court decisions, the California Supreme Court held:

> "Statutory provisions for our review of State Bar Court decisions reflect a legislative acknowledgment that we exercise original jurisdiction over disciplinary proceedings, and that the State Bar's

1   determinations are advisory only. (*Brotsky v. State Bar*, *supra*, 57

2   Cal.2d at p. 301.)"

3   *In re Rose*, 22 Cal.4th 430, 442 (Cal. 2000).

4   "The State Bar Court, however, is not itself a judicial court established

5   by article VI".
    *Id.* at 438.

6   "The State Bar Court exercises no judicial power, but rather makes

7   recommendations to this court, which then undertakes an independent

8   determination of the law and the facts, exercises its inherent
    jurisdiction over attorney discipline, and enters the first and only

9   disciplinary order."

10  *Id.* at 436.

11  "[O]nly this court renders decisions or orders imposing discipline."

12  *Id.* at 442.

13  "Even if an attorney … presents a prima facie claim of legal or factual
    error, we properly may deny review if our independent examination of

14  the record and evaluation of the attorney's factual and legal assertions

15  establish that the recommended discipline should be imposed."
    *Id.* at 460.

16  10.    Regarding the California Supreme Court's exclusive authority over attorney

17  disciplinary matters, California Courts of Appeal held:

18  "[I]n California, the inherent judicial power of the superior court does

19  not extend to attorney disciplinary actions. That power is exclusively
    held by the Supreme Court and the State Bar, acting as its

20  administrative arm. (*Jacobs v. State Bar*, *supra*, 20 Cal.3d at p. 198.)"

21  *Sheller v. Superior Court*, 158 Cal.App.4th 1697, 1710 (Cal. Ct. App. 2008).

22  "The State Bar conducts hearings and makes recommendations

23  on attorney discipline as an "administrative arm" of the high court.
    The Supreme Court, however, retains exclusive and plenary authority

24  over attorney discipline. *(In re Rose* (2000) 22 Cal.4th 430, 438, 444-

25  446.)"
    *Kay v. State Bar of California* A129515 (Cal. Ct. App. Oct. 31, 2011)

26  unpublished slip. op. at 4.

27

28

11.    On December 8, 2020, ROSHAN timely filed a California Supreme Court petition for review of each and every issue remaining in the disciplinary proceedings.

12.    On February 17, 2021, the California Supreme Court denied ROSHAN'S petition for review and ordered:

> "The court orders that Peyman Roshan (Respondent), State Bar Number 303460, is suspended from the practice of law in California for three years, execution of that period of suspension is stayed, and Respondent is placed on probation for three years subject to the following conditions:
>
> 1. Respondent is suspended from the practice of law for the first two years of probation, and Respondent will remain suspended until providing proof to the State Bar Court of rehabilitation, fitness to practice and present learning and ability in the general law. (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(c)(1).)
> 2. Respondent must also comply with the other conditions of probation recommended by the Review Department of the State Bar Court in its Opinion filed on August 27, 2020, and as modified on September 25, 2020.
> 3. At the expiration of the period of probation, if Respondent has complied with all conditions of probation, the period of stayed suspension will be satisfied and that suspension will be terminated.
>
> Respondent must provide to the State Bar's Office of Probation proof of taking and passing the Multistate Professional Responsibility Examination as recommended by the Review Department in its Opinion filed on August 27, 2020, and as modified on September 25, 2020. Failure to do so may result in suspension. (Cal. Rules of Court, rule 9.10(b).)
> Respondent must also comply with California Rules of Court, rule 9.20, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 calendar days, respectively, after the effective date of this order. Failure to do so may result in disbarment or suspension.
> Respondent must also maintain the records of compliance as required by the conditions of probation.

> Costs are awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment."

*Roshan on Discipline,* California Supreme Court, Case No. 265119.

13.    The California Supreme Court has held that its denial of ROSHAN'S petition for review of any issue presented may have "properly" occurred if it finds "the recommended discipline should be imposed" even though the California Supreme Court's "independent examination of the record and evaluation of the attorney's factual and legal assertions establish[ed]" that ROSHAN "present[ed] a prima facie claim of legal or factual error." *In re* Rose, *supra*. This is consistent with the principles of both California and Federal appellate review.  "[W]here a judgment is based upon a general verdict in an action where a determination of any one of several issues presented may have formed the basis for that verdict, which does not permit the application of the doctrine of collateral estoppel to issues in a later action under circumstances where it is necessary to identify the specific issue adjudicated in the original action. (*Stout v. Pearson* (1960) 180 Cal.App.2d 211, 216 [4 Cal.Rptr. 313].)" *Rutherford v. State of California*, 188 Cal.App.3d 1267, 1285 (Cal. Ct. App. 1987).

14.    The California Supreme Court order suspending ROSHAN from the practice of law, being "the first and only disciplinary order" in the disciplinary proceedings against ROSHAN, *In re* Rose, *supra*, does not make "an express finding of a violation of law" as is required by the single statute forming the grounds for the DRE disciplinary action, Cal. Bus. & Prof. Code § 10177(f); it only discusses discipline, i.e., license suspension, probation, California Court Rule 9.20 compliance, and costs.

15.    The California Supreme Court's determination of ROSHAN'S attorney discipline may have been based on one of several issues presented. However, at

least one of the issues presented are not, as the DRE charging statute requires, "acts, which, if done by a real estate licensee, would be grounds for the suspension or revocation of a California real estate license pursuant to the provisions of Sections 10176(a) (Substantial Misrepresentation), 10176(i) (Fraud or Dishonest Dealing), and 10177(j) (Fraud or Dishonest Dealing) of the code." Bus. & Prof. Code § 10177. Accordingly, the DRE's reference to the California Supreme Court's order is insufficient to identify and give notice to ROSHAN regarding which, if any, act the California Supreme Court determined ROSHAN committed, let alone, the charging statutory required notice of whether any such act "if done by a real estate licensee, would be grounds for the suspension or revocation [of ROSHAN'S] California real estate license" pursuant to the statutes cited by the DRE in the Accusation.

16.     On January 17, 2023, ROSHAN emailed counsel for DRE in his disciplinary matter, Megan Olson ("Olson"), stating that because the Accusation is based solely on one statute which requires the DRE show the State Bar disciplinary order was based on express findings of violations of law, but that the California Supreme Court has held that it is not bound by the findings of fact of the State Bar Court, rather it examines the entire record, weighs the evidence, and makes an independent determination and order imposing discipline; and, because the California Supreme Court's disciplinary order makes no findings of violations of law, Roshan requested the DRE, in its discretion, to grant the issuance of a subpoena duces tecum to the California Supreme Court for discovery of precisely what laws it determined to have been violated and the reasons therefor; or, alternatively, for the DRE to issue such a subpoena and provide Roshan any response. "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." Cal. Code Civ. Proc. § 1911.

On January 23, 2023, Ms. Olson emailed ROSHAN, stating: "The Department has denied your request."

17.     In 1995, the California Legislature explicitly and intentionally passed Bus. & Prof. Code §6085(b) to ensure that at a minimum the State Bar provided expanded disclosures to respondent attorneys, over and above those provided by the United State Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963). Prior to its enactment, the State Bar was involved in negotiating with the Legislature the scope of the obligations to be imposed by Bus. & Prof. Code §6085(b). At that time, the State Bar repeatedly acknowledged that the effect of Bus. & Prof. Code §6085(b) was to affirm the application of *Brady* disclosure, and the State Bar even proposed language to expand the scope of the disclosing individuals to the entire State Bar, which expansion was included in the enacted statute. The State Bar understands what these obligations entail, as it articulated them in a closing brief, *In Re Ganz*, Cal. State Bar Court Case No. 14-O-02363-PEM (Sept. 24, 2018). Yet the State Bar now rejects the application of these disclosure duties as owed by the State Bar.

18.     The California Supreme Court recently held the obligation to hand over exculpatory evidence continues throughout the litigation, during the appellate process, and during collateral attacks on the order or judgment. *In re Jenkins* 14 Cal.5th 493 (Cal. 2023). At this time collateral attacks on the Supreme Court's disciplinary order are ongoing in multiple federal fora.

19.     On May 16, 2023, in the DRE disciplinary matter, ROSHAN served the California State Bar requesting production, among other things, relating both to their admitted corruption (pursuant to *Bracy* and *Gacho*) and their *Brady* exculpatory material pursuant the State Bar has a continuing duty to produce pursuant to Bus. & Prof. Code §6085(b). Even though the DRE charging statute (Bus. & Prof. Code § 10177) requires the underlying disciplinary proceedings to

have fairly provided an opportunity for a hearing and to provide due process rights comparable to those provided under the Administrative Procedures Act, the State Bar (supported by the DRE) moved to quash the subpoenas in part on the grounds that they are not relevant. The Administrative Order quashed the subpoenas stating "[r]espondent's subpoenas and affidavits…are overbroad…and…respondent has not demonstrated how those documents would be relevant to the accusation against respondent that is at issue before the Department". Order Quashing Subpoenas, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed September 14, 2023.

20.     On September 25, 2023, in an effort to ascertain the exact documents to subpoena from the State Bar, ROSHAN filed and served the DRE a motion for leave to conduct a preliminary deposition of the State Bar Custodian of Records regarding, among other things, the *Brady* exculpatory documents the State Bar has a continuing duty to produce pursuant to Bus. & Prof. Code §6085(b). The Administrative Order denied the motion stating its authority to order deposition is limited to situations where the witness "will be unable or cannot be compelled to attend" the hearing.  Order Denying Motion for Leave to Depose, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed October 2, 2023.

21.     On October 3, 2023, ROSHAN moved for an order for the issuance of a subpoena duces tecum on California State Bar Custodian of Records to either appear at the December 4, 2023 hearing or to produce documents at a reasonable time and place or at the hearing relating, in part, to *Brady* exculpatory documents the State Bar has a continuing duty to produce pursuant to Bus. & Prof. Code §6085(b). The Administrative Order denied the motion stating "Respondent fails to establish that the State Bar has or may have any records that are not already

available to him but that may be relevant or admissible in this matter." Order Denying Motions, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed October 6, 2023.

22.     On October 18, 2023, Roshan moved for an order for the issuance of a subpoena duces tecum on California Supreme Court custodian of records to appear at the December 4, 2023 hearing and produce documents relating to the California Supreme Court's specific findings of culpability in Roshan's disciplinary action. On October 25, 2023 the Administrative Order denying ROSHAN'S motion stated "Respondent did not identify the requested documents with any specificity." Order Denying Motion, *In the Matter of Peyman Beykpour (also known as Peyman Roshan)*, OAH No. 2023070254, filed October 25, 2023.

23.     On October 31, 2023, in an effort to ascertain the exact documents to subpoena from California Supreme Court custodian of records, ROSHAN moved for an order to preliminarily depose the California Supreme Court custodian of records to ascertain the that show the California Supreme Court's findings resulting in its denial of Roshan's petition for review and thereby accepting of the State Bar's recommended discipline.

24.     ROSHAN thus has no procedural avenue in the DRE disciplinary proceedings to obtain evidence supporting such defenses. And any such evidence ROSHAN may have provided in support of such defenses, the OAH has held to be inadmissible.

## THE INADEQUACIES OF THE CALIFORNIA SUPREME COURT ORDER TO MEET STATUTORY DUE PROCESS AND CONSTITUTIONAL DUE PROCESS REQUIREMENTS FOR RECIPROCAL DISCIPLINE IN DRE PROCEEDINGS

25.     Under decades of United States Supreme Court authority, attorney discipline procedures are required to adhere to the requirements of due process reserved for the most important personal and property interests of individuals.  These proceedings have been labeled "quasi-criminal", and an attorney disciplinary respondent is entitled to notice, a full and fair opportunity to be heard, including cross-examination and to be represented by counsel, an independent and fair tribunal, the right to have process of the tribunal to obtain the presence of witnesses and production of documents to testify and be entered as evidence, and where the tribunal is not a court, meaningful judicial review.

26.     One of the leading cases on this point is *In re Ruffalo,* 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968).  In this case the United States Supreme Court ruled that:

> In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until after both he and Orlando had testified at length on all the material facts pertaining to this phase of the case. As Judge Edwards, dissenting below, said, "Such procedural violation of due process would never pass muster in any normal civil or criminal litigation." 370 F. 2d, at 462.
>
> These are adversary proceedings of a quasi-criminal nature. Cf. *In re Gault,* 387 U. S. 1, 33. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.

*In re Ruffalo, supra,* at 550-551.

27.     In *Ruffalo,* after the accused attorney Ruffalo testified, his testimony was used as justification for a motion to amend the notice of charges against him, and the trial was continued for several months to permit him to put together a defense to the new charges. *Id. Ruffalo* held amending the disciplinary charges after the accused has testified, even if additional time to respond is granted, is a violation of the right to notice.

28.     In a series of cases in 1989 through 1990, the California Supreme Court

decided to reject *Ruffalo,* and explicitly held that what the Supreme Court ruled

was unconstitutional in *Ruffalo* would be permitted in California attorney

disciplinary proceedings:

> Petitioner contends that the review department's conclusion that
> he engaged in "multiple acts of misappropriation" was improper
> because the notice to show cause charged only a single act of
> misappropriation. Petitioner argues that, by making findings beyond
> the scope of the charging document, the review department denied
> him his fundamental right to notice of the charges against him and an
> opportunity to defend against them.
>     An attorney may not be disciplined for a violation not alleged in
> the notice to show cause. (*Van Sloten v. State Bar* (1989) 48 Cal.3d
> 921, 928 [258 Cal. Rptr. 235, 771 P.2d 1323]; *Gendron v. State Bar*
> (1983) 35 Cal.3d 409, 420 [197 Cal. Rptr. 590, 673 P.2d 260].) When
> the evidence at the hearing discloses misconduct not charged in the
> original notice, the State Bar may move to amend the notice to
> conform to the proof; but, if the State Bar fails to do so, the attorney
> may be disciplined only for the misconduct alleged in the original
> notice. (*Ibid.; see also, Rose v. State Bar* (1989) 49 Cal.3d 646, 654
> [262 Cal. Rptr. 702, 779 P.2d 761].)
>     Although evidence of uncharged misconduct may not be used as
> an independent ground of discipline, it may be considered for other
> purposes relevant to the proceeding. (*See, e.g., Arm v. State Bar*
> (1990) 50 Cal.3d 763, 775 [268 Cal. Rptr. 741, 789 P.2d 922].) Here,
> evidence of uncharged misconduct was relevant to establish a
> circumstance in aggravation.

*Edwards v. State Bar* (1990) 52 Cal.3d 28, 35-36; *see also Grim v. State Bar*

(1991) 53 Cal.3d 21, 33-4.

29.     The California Supreme Court, by multiple published opinions, explicitly

permitted the State Bar to take the actions prohibited in *Ruffalo.*  Since that time,

the Chief Trial Counsels, which under the State Bar Act are responsible for

drafting the Rules of Procedure of the State Bar of California (the "Rules of

**COMPLAINT**

Procedure") which govern all attorney discipline proceedings, have eliminated all meaningful rights to notice of charges.  There are four elements to such notice:

(i)   What are the FACTS that the Chief Trial Counsel alleges occurred?

(ii)   What are the DUTIES that the Chief Trial Counsel claims were violated?

(iii)  What is the EVIDENCE supporting the FACTS alleged by the Chief Trial Counsel?

(iv)  What is the THEORY that connects the alleged FACTS and EVIDENCE to the violation of the DUTIES?

30.    Prior to 2010, a notice of disciplinary charges ("NDC") was required to inform the respondent of items (i), (ii), and (iv).  This obligation was set out by the State Bar Court Review Department twenty years ago in *In Re Varakin* (Review Dept. 1994) 3 State Bar Ct. Rptr. 179, 185.

31.    Prior to 2010 a respondent attorney could use the tools of civil discovery to learn items (i), (ii), (iii) and (iv) if the respondent attorney needed additional clarification.

32.    Under the current Rules of Procedure, a respondent is only entitled to learn items (i) in an abbreviated form, without the specifics of time, place and manner of the alleged misconduct and (ii) in an abbreviated form from the NDC and the preliminary notice letter, which only includes the citation of the relevant statute from the State Bar Court and quoting the language of the statutory provision cited.  The right to use interrogatories and requests for admission have been eliminated, thus the use of discovery to supplement any inadequacy in the NDC is gone.  While the Chief Trial Counsel (and by extension the lawyers he or she supervises, known as the Office of Chief Trial Counsel, or "OCTC") is required to hand over copies of the documents in its possession which may be used to support the claim, there is no obligation to explain which documents will be used to prove what facts in support of which claims.  In addition, as a matter of

practice and unpublished decisional law, the State Bar Hearing Department and Review Department do not recognize the right to see the entire State Bar file, therefore non-privileged information which could be exculpatory is never released.  Indeed, the State Bar Hearing Department and Review Department have required that a party demonstrate that the information claimed as privileged be proven to be not privileged without any kind of inspection; therefore the Chief Trial Counsel and OCTC have successfully defeated motions to disclose because disclosure would include file tabs and indexes.

33.     The position of the Chief Trial Counsel (and the OCTC which acts under him or her) is that a respondent attorney is only entitled to learn item (ii).  In 2015, after the imposition of revisions to the Rules of Procedure eliminating detailed fact pleading, the Hearing Department Judges thought this inadequate, and issued disclosure orders that require both parties to disclose items (i) and (iii), but not item (iv).  Disclosure of the THEORY of the Chief Trial Counsel's case is necessary to allow a respondent to assemble the correct arguments and evidence to rebut it.  The Chief Trial Counsels (and by extension the OCTC) have demonstrated that they are perfectly willing to change their theory of the case, in violation of a respondent's due process rights, even after the trial.

34.     Since 2010 the Chief Trial Counsels have caused the State Bar to materially alter the due process protections that have been present in the state bar disciplinary process for decades.  The purpose of these changes has been openly declared to reduce the amount of work that the Chief Trial Counsel and the OCTC must perform in a prosecution and to increase the speed of proceedings. The undeclared but obvious purpose is to railroad innocent lawyers by eliminating their ability to contest prosecutions that are unsupported by law or evidence or obtain such dismissals at an early stage.   There is no shortage of recent examples of such prosecutions.  *See, e.g. In re McHugh* (Hearing Dept.

July 1, 2013) Docket No. 07-O-14334-DFM; *In re Robinson* (Review Dept. Sept. 19, 2013) Case No. 12-O-10716; *In Re Bradshaw* (Review Dept. July 30, 2019) Docket No. 16-0-15558.  The purpose of these improper prosecutions is to raise the prosecution rate to camouflage the fact that the Chief Trial Counsels and OCTC have for decades refused to pursue valid complaints against attorneys who are closely connected to California judges, the Board of Trustees of the State Bar, Chief Trial Counsel, the OCTC, State Bar investigators, State Bar executives, and/or State Bar administrators.  A case in point is Thomas V. Girardi ("Girardi"), whose decades of stealing client moneys and misconduct was ignored, likely even assisted by, the State Bar. His crimes continued until the Los Angeles Times published an exposé detailing the misconduct which the Chief Trial Counsels had refused to prosecute. The State Bar received 136 complaints about Girardi between Aug. 10, 1982, and Dec. 17, 2020 including readily provable allegations of client fund misappropriation (when Girardi and his firm were forced into bankruptcy); none resulted in public discipline. Girardi currently faces 17 Federal criminal counts mostly for defrauding his clients. Girardi's crimes remained unchecked by the State Bar because he had corrupted the State Bar at all levels: its Intake Unit, Investigations, attorneys at the OCTC, Special Deputy Trial Counsel, the Executive Directors and others in that branch, Members of the Board of Trustees ("Board"), the Office of General Counsel, and the State Bar Court. This resulted in reports about Girardi's malfeasance from outside to the State Bar to wrongfully be closed, and reports about his wrongful connections to the State Bar from within to not only remain uninvestigated but to result in terminations of those making the reports. The State Bar provided cover for Girardi to continue to perpetrate crimes for years, crimes for which it may be too late to hold him accountable. As a result of the Girardi scandal, the State Bar has multiply hired independent counsel to investigate those involved at the State

Bar in the Girardi scandal as well as to review the files of other attorneys avoiding discipline despite repeated State Bar complaints. The records of attorneys in the latter category took up 28 boxes, leaving one investigating attorney convinced State Bar employees ignore complaints against those with State Bar connections and other resources which render prosecuting them distasteful. He opined: "There is not just one Girardi…They got 50 who worry the hell out of me." To date, none of those corrupted officials charged with protecting the public from the very conduct they perpetuated, and knowingly allowed others to perpetuate, have been publicly held to account. On information and belief some still serve at the State Bar.  It is an established violation of due process for members of the judicial branch to treat some defendants more harshly in order to balance out leniency improperly granted to other defendants.  *See Gacho v. Wills,* No. 19-3343 (7th Cir. February 8, 2021); *Bracy v. Gramley*, 520 U.S. 899 (1997). However, California law neither recognizes *Bracy* and *Gacho* claims against members of the judicial branch, nor will it allow evidence necessary to show a *Bracy* and *Gacho* violation, in fact any such evidence is deemed inadmissible.

35.     Prior to 2010, the combination of the fully pled complaints and discovery tools gave both the State Bar Court and State Bar respondents a clear understanding of the version of reality and the law that the Chief Trial Counsels and OCTC asserted is true. These rights have since been erased.  First, the 2010 Rules of Procedure eliminated references to discovery requests such as interrogatories and requests for admission and may have erased their availability entirely.  On or around 2013, the Chief Trial Counsel pushed through a revision of Rule 5.41 which replaced the existing pleading rules with California criminal notice pleading.

36.     On February 20, 2013 the former Chief Trial Counsel, Jayne Kim, sent out a memo arguing for a change in Rule 5.41 to criminal style "notice pleading."  She wrote at pages 3-4 that:

> "Notice pleading" is the form of pleading that is typically used in the criminal arena and is embodied by the accusatory pleadings used in California criminal procedure. Traditionally, a "notice pleading" consists of a brief general statement of the matter involved, sufficient merely to give the opposing party reasonable notice of the claim, and omitting any detailed statement of the ultimate facts. (4 Witkin, California Procedure (5th ed. 2012) Pleading, section 379.)
>       Presumably, this short form of pleading, as opposed to fact pleading, is sufficient in criminal cases, as opposed to a civil dispute between private parties, because the duty of all citizens to refrain from the commission of criminal acts is universal and need not be factually established in a criminal accusation to satisfy due process notice concerns. Similarly, a member's duties and oaths vis a vis the Rules of Professional Conduct and the State Bar Act are also presumed, such that facts which provide the member notice of the essential elements of the State Bar's case should be sufficient.

J. Kim, OCTC, February 20, 2013 Memo at 3-4.

37.     The Board of Trustees' RAD Committee which approves changes to the Rules of Procedure, passed this rule change even though the due process analysis is a complete fiction.  *Id.*   The California Supreme Court has held that notice pleading in a criminal information is completely INADEQUATE for due process purposes and is nothing more than a formality, because

> the information has a "limited role" of informing defendant of the kinds and number of offenses; "the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript," which represents "the touchstone of due process notice to a defendant." (*People v. Jeff, supra,* 204 Cal. App.3d at p. 342; *see also People v. Thomas* (1987) 43 Cal.3d 818, 829 [239 Cal. Rptr. 307, 740 P.2d 419]; *People v. Martinez, supra,* 197 Cal. App.3d at pp. 779-780 [dis. opn.]; *People v. Gordon, supra,* 165 Cal. App.3d at pp. 868-870 [conc. opn.]; *People v. Dunnahoo, supra,* 152 Cal. App.3d at p. 571.)

*People v. Jones* (1990) 51 Cal.3d 294, 312.

38.     As the *Jeff* decision endorsed by the California Supreme Court explained,

> An information which charges a criminal defendant with multiple counts of the same offense does not violate due process so long as (1) the information informs defendant of the nature of the conduct with which he is accused and (2) the evidence presented at the preliminary hearing informs him of the particulars of the offenses which the prosecution may prove at trial. (*People v. Jordan* (1971) 19 Cal. App.3d 362, 369-370 [97 Cal. Rptr. 570]; *People v. Tolbert* (1986) 176 Cal. App.3d 685, 690, fn. 2 [222 Cal. Rptr. 313].) The information plays a limited but important role — it tells a defendant what kinds of offenses he is charged with and states the number of offenses that can result in prosecution. However, the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript. This is the touchstone of due process notice to a defendant. (*People v. Gordon, supra,* 165 Cal. App.3d 839, 870-871 (conc. opn. of Sims, J.).) So long as the evidence presented at the preliminary hearing supports the number of offenses charged against defendant and covers the timeframe(s) charged in the information, a defendant has all the notice the Constitution requires.

*People v. Jeff* (1988) 204 Cal. App.3d 309, 341-342.

39.     The California appellate courts have repeatedly made clear that criminal notice pleading is only permissible because there is a mini-trial—the preliminary hearing—in which the prosecution must put on witnesses who are cross-examined and in which the entire theory of the case and evidence is put forward in a hearing.  *People v. Jeff*, *supra*; *People v. Jones*, *supra*.

40.     The standards for the State Bar's NDC are facially constitutionally inadequate because there is no preliminary hearing and no right of discovery in State Bar proceedings.  The current Rules of Procedure are thus facially unconstitutional in those instances where the NDC is written at the minimum required level, which is all of them, and discovery is denied or unavailable, which is all of the cases where discovery has been requested by attorneys in the past nine years.

41.     Along with the power to amend the NDC after the trial has begun, the Rules of Procedure allow the Chief Trial Counsel (and by extension the OCTC) to

amend the NDC and add charges right up to the date of trial, and as a matter of practice, written and unwritten policy, and State Bar Court case law, no adequate time to prepare a defense to new charges is granted.

42.    The OCTC, the State Bar court, and the California Supreme Court on review of State Bar disciplinary proceedings subject non-government attorneys to discipline for conduct which they expressly or impliedly deem permitted by government attorneys.

43.    The Rules of Procedure, and the Review Department case law, do not recognize a constitutional right of an attorney to be represented by counsel, as confirmed by numerous written orders and opinions.  Accordingly, the State Bar court may refuse to hear counsel, or refuse requests for continuances required by counsel, on an arbitrary basis.  This violates a fundamental tenet of due process under *Goldberg v. Kelly,* 397 U.S. 254, 270-271 (1970).

44.    The pattern and practice of the State Bar courts, set out in written orders, is to limit and deny continuances when requested by a respondent attorney, but to grant them when either the Chief Trial Counsel, OCTC or the State Bar Court judge is inconvenienced. Thus the State Bar Court judges have interrupted cases and stayed them for five years because the State Bar Court Hearing Department Judge does not wish to call particular witnesses before him; the Hearing Department has cancelled trials en masse for its own convenience; and members of the OCTC have obtained continuances based on their workload; but requests for continuances of trial and motions of weeks or months by defendant attorneys are routinely denied

45.    While the State Bar Act authorizes a respondent attorney to issue subpoenas, the Hearing Department judges do not allow a respondent to actually call witnesses for the defense if the State Bar objects, on the grounds that it may support some claim by respondents which defeats a claim charged by the State

Bar as would by necessity means the State Bar expects, notwithstanding to probity of such sought evidence, the court has made a preliminary assessment as to the merits of the State Bar's charges. This standard is in stark contrast with the standard provided under the Administrative Procedures Act which applies the same standard as civil cases for granting subpoenas of witnesses to appear and documents to be produced at hearings. The Hearing Department Judges also do not allow a respondent attorney to enforce subpoenas to call back witnesses who have testified for the prosecution, as reflected in written State Bar Court orders. Finally, if the witness files a motion to quash the subpoena, the Hearing Department Judges will not enforce the subpoena because the filing of the motion automatically stays the obligation to appear, and then the fact that the notice date of the subpoena has passed makes, under the State Bar Courts views, invalid. These rules, reflected in numerous State Bar Court orders make it impossible for attorneys defending a case to cross-examine witnesses with contradictory testimony of other witnesses or documents issued after the first witness has appeared, or to cross-examine persons whose written statements are introduced as evidence. *See Goldberg v. Kelly,* 397 U.S. 254, 268 (1970); *Willner v. Committee on Character and Fitness,* 373 US 96, 103-104 (1963).

46.     The Rules of Procedure of the State Bar and the State Bar's written and unwritten internal rules and policies regarding prosecutions are facially unconstitutional in the following respects:

(i) The standard of pleading, California criminal notice pleading, is unconstitutional because it provides inadequate notice and there is no preliminary hearing or right to discovery in the form of interrogatories;

(ii) The California Supreme Court has explicitly approved the practice of amending an NDC after the trial has begun, in violation of *Ruffalo,* and the Rules of Procedure do not prohibit this;

**COMPLAINT**

(iii) Even if the NDC is not amended, the California Supreme Court approves the practice of increasing the penalties to be imposed on a respondent lawyer to the same extent as if the charge were added to the NDC and proven, and the Rules of Procedure do not prohibit this;

(iv) The Hearing Department allows, and the Review Department affirms, in accordance with the Rules of Procedure, the addition of new charges up to the date of trial with no adequate additional time granted to prepare defenses against the new charges;

(v) The Hearing Department and Review Department, in accordance with the Rules of Procedure, reject the existence of a constitutional right to counsel;

(vi) The Hearing Department and Review Department, in accordance with the Rules of Procedure, impose different standards for granting requests for continuances, and granting requests for delays of months to years desired by State Bar personnel, but regularly denying requests by attorney respondents;

(viii) The State Bar Court Hearing Department and Review Department, in accordance with the Rules of Procedure, do not provide respondent attorneys with enforceable rights to issue subpoenas for third-party witnesses and documents held by third-parties;

(viii) The State Bar Court Hearing Department and Review Department, in accordance with the Rules of Procedure, do not guarantee a right to cross-examine persons concerning written statement they have made that are proposed to be entered or entered into evidence by the Chief Trial Counsel and OCTC by permitting or authorized deposition subpoenas or trial subpoenas against such persons;

COMPLAINT

(ix) The Rules of Procedure, and the State Bar's written and unwritten internal rules and policies, do not prohibit, prevent, or restrain the Chief Trial Counsel from over-aggressive prosecution of lawyers who do not have personal relationships with California judges, the State Bar Board of Trustees, the OCTC, or the Chief Trial Counsel to compensate for their refusal to prosecute lawyers with such personal relationships, or adequately ensure that such connected lawyers are prosecuted;

(x) The Rules of Procedure at Rule 5.46 only allow disqualification of State Bar Court judges for violation of an enumerated subset California statutory rules of disqualification and not for violation of the Fourteenth Amendment; in particular, and without limitation, State Bar Court judges may not be disqualified for violating *Gacho v. Wills,* No. 19-3343 (7th Cir. February 8, 2021) or *Bracy v. Gramley*, 520 U.S. 899 (1997), and a litigant may not obtain discovery against a State Bar Court judge under *Bracy*, *supra*, even where there is prima facia evidence of corruption of the State Bar Court judges; and in addition, California appellate case law bars introduction of evidence of any judges rulings to prove that the judge is not fit to serve under the Fourteenth Amendment, in violation of United States Supreme Court case law that a judge's rulings, on their own, may be sufficient to demonstrate actual bias or an intolerable risk of bias (*see, e.g., Roitz v. Coldwell Banker Residential Brokerage Co.,* 62 Cal.App.4th 716 (1998));

(xi) State Bar Court judges quash respondent issued subpoenas sua sponte without providing respondents notice and an opportunity to be heard.

47.     After ROSHAN's testimony was elicited for facts unrelated to charges in the NDC, and notwithstanding his objections to the relevance of such interrogation, his testimony was coupled with irrelevant documentary evidence and used to add

discipline for uncharged misconduct, which discipline is the equivalent of adding new charges.

48.     ROSHAN raised constitutional issues in a request for review to the Review Department. In the responsive brief, the Chief Trial Counsel and OCTC stated that the Review Department lacked jurisdiction to address any constitutional arguments.  ROSHAN filed a reply brief that withdrew and reserved all constitutional arguments and only made non-constitutional arguments. ROSHAN's non-constitutional arguments were accepted in some, but not all respects, and the State Bar Court Review Department, though overturning about half of the findings of culpability and the related counts, affirmed the disciplinary recommendation of a two-year suspension.  ROSHAN filed a petition for review, which did not assert any of the constitutional issues set forth herein, with the California Supreme Court.  The petition was denied on February 17, 2021.

49.     ROSHAN has standing to obtain the prospective relief requested in this action.  "Standing is determined by the facts that exist at the time the complaint is filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).  "To have standing….Plaintiffs must show "either 'continuing, present adverse effects' due to [their] exposure to …. past illegal conduct or 'a sufficient likelihood that [they] will again be wronged in a similar way.'" *Villa v. Maricopa County,* 865 F.3d 1224, 1229 (9th Cir. 2017)" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119-20 (9th Cir. 2020)(first quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); then quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

50.     At the time the action was filed, in November 2023, ROSHAN was suspended from the practice of law in California. The effects of prevailing in this action would be to either require the DRE to obtain express findings of violations

of law by the California Supreme Court as against ROSHAN or by declaring the single ground, i.e., the California Supreme Court denial of ROSHAN petition for review and disciplinary order, upon which the DRE disciplinary action is based, inadequate to DRE charging statute for the DRE to proceed.  This constitutes prospective relief.


**WHEREFORE,** Plaintiff ROSHAN respectfully demands the following relief on behalf of himself:

## FIRST COUNT
### INJUNCTIVE RELIEF
(By ROSHAN as Against MCCAULEY, and DOES 1-10.)

51.    ROSHAN hereby incorporates all preceding allegations as if set forth herein in full.

52.    The DRE disciplinary action against ROSHAN should be enjoined until such time as the DRE has obtained from the California Supreme Court any express findings of any violation of law by ROSHAN in *Roshan on Discipline*, Case No. S265119, or, alternatively, because the statutory requirement of express findings of violation of law is not met.

53.    The DRE disciplinary action against ROSHAN should be enjoined because the DRE, any administrative law judge in that proceeding, and any Superior Court on review, does not have jurisdiction over attorney disciplinary matters.

54.    The DRE disciplinary action against ROSHAN should be enjoined because the California standards for fair procedure are not met.

55.    The DRE disciplinary action against ROSHAN should be enjoined because the California standards for fair investigation are not met.

56.    The DRE disciplinary action against ROSHAN should be enjoined because the minimum due process standards required under the single statute forming the grounds for the DRE disciplinary action are not met.

57.    Costs and reasonable attorneys fees should be awarded.

<u>SECOND COUNT</u>

RELIEF UNDER *EX PARTE YOUNG*

(By ROSHAN as Against MCCAULEY in his official capacity)

58.    ROSHAN hereby incorporates all preceding allegations as if set forth herein in full.

59.    As articulated in Paragraphs 5 through 15, the California Supreme Court denial of ROSHAN'S petition for review and disciplinary order do not meet the statutory requirement of providing express findings of any violation of law upon which the DRE disciplinary action may be based.

60.    The Rules of Procedure and written and unwritten policies and practices of the Chief Trial Counsels, the OCTC, the State Bar Court, and California Supreme Court, which at least in part form the basis of the California Supreme Court's order disciplining ROSHAN, are facially unconstitutional in the respects articulated in Paragraphs 25 through 50 under the First Amendment as applied under the Fourteenth Amendment, and under the due process clauses of the Fourteenth Amendment.

61.    ROSHAN is entitled to enjoin the DRE from proceeding against him based on the single statute on the Accusation as neither the DRE, any Administrative body, nor any Superior Court has jurisdiction over attorney disciplinary matters.

62.    ROSHAN is entitled to enjoin the DRE from proceeding against him because the attorney disciplinary proceedings against him did not meet the minimum due

COMPLAINT

process requirements of the single statute upon which the DRE disciplinary proceedings are based.

63.    ROSHAN is entitled to enjoin the DRE from proceeding against him because the attorney disciplinary proceedings against him which form the sole basis for these DRE disciplinary proceedings did not meet the California standards for fair procedure.

64.    ROSHAN is entitled to enjoin the DRE from proceeding against him because the DRE disciplinary proceedings against him do not meet the California standards for fair procedure.

65.    ROSHAN is entitled to enjoin the DRE from proceeding against him because the DRE disciplinary proceedings against him do not meet the California standards for fair investigation.

66.    ROSHAN is entitled to enjoin the DRE from proceeding against him because the State Bar Rules of Procedure are facially unconstitutional and that the articulated practices and policies set forth above are unconstitutional, and violated the due process rights of ROSHAN.

67.    Costs and reasonable attorneys fees should be awarded.


## THIRD COUNT

## DECLARATORY JUDGMENT

(By ROSHAN as Against MCCAULEY in his official capacity)

68.    ROSHAN hereby incorporates all preceding allegations as if set forth herein in full.

69.    As articulated in Paragraphs 5 through 15, the California Supreme Court's denial of ROSHAN'S petition for review and disciplinary order do not meet the statutory requirement of providing express findings of any violation of law upon which the DRE disciplinary action may be based.

70.     ROSHAN is entitled to a declaratory judgment that the DRE, any administrative law judge in that proceeding, and any Superior Court on review, does not have jurisdiction over attorney disciplinary matters.

71.     ROSHAN is entitled to a declaratory judgment that the attorney disciplinary proceedings against ROSHAN did not meet the minimum due process requirements of the single statute upon which the DRE disciplinary proceedings are based.

72.     ROSHAN is entitled to a declaratory judgment that the attorney disciplinary proceedings against ROSHAN did not meet the California standards for fair procedure and therefore the reciprocal discipline requested by the DRE is unavailable.

73.     ROSHAN is entitled to a declaratory judgment that the DRE disciplinary proceedings against ROSHAN do not meet due process rights afforded under the California Constitution and therefore the reciprocal discipline requested by the DRE is unavailable.

74.     ROSHAN is entitled to a declaratory judgment that the DRE disciplinary proceedings against ROSHAN do not meet due process rights afforded under the Constitution of the United States and therefore the reciprocal discipline requested by the DRE is unavailable.

75.     ROSHAN is entitled to a declaratory judgment that the DRE disciplinary proceeding against ROSHAN, which is alleged to be solely on the California Supreme Court's determination of ROSHAN'S attorney disciplinary matter, violates California's "residuum rule" for being based solely on inadmissible hearsay evidence.

76.     ROSHAN is entitled to a declaratory judgment that the DRE disciplinary proceedings against ROSHAN do not meet the California standards for fair

procedure and therefore the reciprocal discipline requested by the DRE is unavailable.

77.    ROSHAN is entitled to a declaratory judgment that the DRE disciplinary proceedings against ROSHAN do not meet the California standards for fair investigation and therefore the reciprocal discipline requested by the DRE is unavailable.

78.    The Rules of Procedure and written and unwritten policies and practices of the Chief Trial Counsels, the OCTC, the State Bar Court, and California Supreme Court, which at least in part form the basis of the California Supreme Court's order disciplining ROSHAN, are facially unconstitutional in the respects articulated in Paragraphs 25 through 50 under the First Amendment as applied under the Fourteenth Amendment of the United States Constitution, and under the due process clauses of the Fourteenth Amendment and therefore the reciprocal discipline requested by the DRE is unavailable.

79.    ROSHAN is entitled to a declaratory judgment that the California Supreme Court denial of ROSHAN'S petition for review and disciplinary order do not meet the statutory requirement of providing express findings of any violation of law upon which the DRE disciplinary action may be based and therefore the reciprocal discipline requested by the DRE is unavailable.

80.    ROSHAN is entitled to a declaratory judgment that the DRE and OAH have foreclosed any opportunity for him to obtain evidence supporting defenses that the State Bar disciplinary proceedings upon which the DRE action is based were corrupt and/or did not provide him a fair opportunity for a hearing.

81.    Defining term is supreme court considers them quasi-criminal, but the State Bar rejects the criminal procedure, i.e. stating that *Brady* is not the standard even though the State Bar was a part of the negotiations and the legislature built into the statute that agreed upon *Brady* disclosure requirement.

82.     Costs and reasonable attorneys fees should be awarded.

Dated:          November 11, 2023

                                 By:          /s/CYRUS SANAI
                                              Cyrus Sanai
                                              Attorney for Peyman Roshan

**COMPLAINT**